# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| LAWRENCE E. HODGE and MARIA T. HODGE, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 3:22-cv-00072<br>)<br>) |
| GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF PLANNING AND NATURAL RESOURCES, ANDREW SMITH, EXECUTIVE DIRECTOR, VIRGIN ISLANDS WATER AND POWER AUTHORITY, and ALVIN NEWTON, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**APPEARANCES:**

**Maria Tankenson Hodge, Esq.**
HODGE & HODGE
ST. THOMAS, U.S. VIRGIN ISLANDS
> *For Plaintiffs Lawrence E. Hodge and Maria T. Hodge*

**Sheena Conway, Esq.**
ASSISTANT ATTORNEY GENERAL
OFFICE OF THE ATTORNEY GENERAL
ST. THOMAS, U.S. VIRGIN ISLANDS
> *For Defendants Government of the Virgin Islands and Alvin Newton*

**Patricia Quinland, Esq.**
ASSISTANT GENERAL COUNSEL
VIRGIN ISLANDS WATER & POWER AUTHORITY
ST. THOMAS, U.S. VIRGIN ISLANDS
> *For Defendant Andrew Smith*

# **MEMORANDUM OPINION**

**MOLLOY, Chief Judge**

**BEFORE THE COURT** is Defendants Government of the Virgin Islands (GVI)[1] and Alvin Newton's Motion to Dismiss for Failure to Exhaust Administrative Remedies (Mot.), filed on February 3, 2023. (ECF No. 17.) Plaintiffs filed an opposition to the motion on February 7, 2023. (ECF No. 18.). Defendants filed a reply thereto on February 23, 2023. (ECF No. 20). For the reasons stated below, the Court will deny the motion.

## **I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs allege that they own certain property in St. Thomas, U.S. Virgin Islands, that, at the time of purchase in 1981 to September 2017, was improved with a structure housing four separate apartment units. Complaint (Compl.) (ECF No. 1) at ¶¶ 8-9. The structure was greatly damaged by Hurricane Irma. *Id*. at ¶ 12. Plaintiffs reconstructed the building, restoring the four apartment units. *Id*. at ¶¶ 13, 16. Plaintiffs assert that they complied with all permitting requirements prior to the reconstruction. *Id*. at ¶¶ 14-15. According to Plaintiffs, prior to the hurricane, each apartment unit had its own dedicated electric meter, with a fifth electric meter that powered the common areas of the building (designated the "House" meter), and each tenant of the separate units were billed and paid for the electricity for that unit and Plaintiffs received the bill and paid the amounts generated by the fifth "House" meter. *Id*. at ¶¶ 9-11.

After the reconstruction was complete, in or about September 2022, Plaintiffs claim that for the first unit they rented, the tenant was allowed electric service for that unit. *Id*. at 16. Thereafter, for the second and third units they rented, Plaintiffs allege that they were instructed by Virgin Islands Water and Power Authority ("WAPA") that the Virgin Islands Department of Planning and Natural Resources ("DPNR") needed to approve those units for electric service before the electric meters could be energized for those units. *Id*. at ¶¶ 16-18. Plaintiffs allege that Defendant Alvin Newton (Newton), acting as a DPNR inspector, advised them that a "house" meter for common areas was not allowed, according to a WAPA "rule,"

---

[1] Said Defendant notes that the Department of Planning and Natural Resources cannot be sued. Mot. at 1 n.1. Plaintiffs explain that they are not suing the Department separately apart from the Government of the Virgin Islands. Opp'n at 1 n.1.

and, since they had four apartments and four meters (the designated "House" meter and meters for three of the four apartment units) already approved for service, he could not approve electric service for a fifth meter (for the fourth apartment). *Id*. at ¶¶ 18-19. Consequently, based upon this "rule," Newton allegedly refused to supply Plaintiffs with a DPNR approval for electric service for all four apartment units, plus the "House" meter. *Id*. at ¶ 19. Upon inquiry with WAPA, however, Plaintiffs were told that no such rule existed. *Id*. at ¶ 20.

Plaintiffs claim that they sought relief from Defendant Andrew Smith, Director of WAPA, to no avail. *Id*. at ¶ 25. They also allege that, when initially contacted by Plaintiff Lawrence Hodge, Newton's supervisor agreed to issue approval of the sought-after electric service, but, then, did not do so. *Id*. at ¶¶ 26-27. In addition, Plaintiffs allege that when Newton cited the WAPA "rule" preventing him from approving electric service for a fifth meter for their apartment building, he also related that he was angry with Plaintiff Lawrence Hodge for allegedly not returning a "pan" that Newton had brought to a party held at said Plaintiff's home. *Id*. at ¶ 23. Based upon this accusation, Plaintiffs believe that Newton made up the alleged WAPA "rule" upon which he relied and wrongfully exercised his authority as a DPNR inspector by refusing to approve the requested electric service to "punish" said Plaintiff. *Id*. at ¶ 24.

Plaintiffs charge Defendants with depriving Plaintiffs of their constitutional rights in violation of Section 1983 of Title 42 of the United States Code and tortiously interfering with their contracts. *Id*. at 8-10. They seek money damages and injunctive relief. *Id*. at 10. Defendants GVI and Newton move to dismiss for failing to state a claim upon which relief can be granted.[2]

## II. LEGAL STANDARD

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a Rule 12(b)(6) motion to dismiss, the Court must accept as true all

---

[2] As mentioned above, said Defendants filed the dismissal motion arguing that Plaintiffs failed to exhaust administrative remedies. However, said Defendants make no argument that Count II alleging a common law claim for tortious interference with a contract should be dismissed.

the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004). *See also Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (where the court reiterates the (12(b)(6) standard: "[W]e must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" (quoting *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Further, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) *cert. denied*, 562 U.S. 1271 (2011).

The Supreme Court set forth the "plausibility" standard for overcoming a motion to dismiss in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "'merely consistent with' a defendant's liability, . . . 'stops short of the line between possibility and plausibility of "entitlement of relief."'" *Id.* (citing *Twombly*, 550 U.S. at 557).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679).

## III. DISCUSSION

Plaintiffs allege a claim pursuant to Section 1983 of Title 42 of the United States Code in Count I of their Complaint. In Count II, they assert a claim for tortious interference with contract. Defendants GVI and Newton move to dismiss the complaint for failure to exhaust administrative remedies.³

### A. Failure to Exhaust Administrative Remedies

Courts have widely held that "[f]ailure to exhaust administrative remedies is an affirmative defense that defendants bear the burden to plead and prove." *Cerome v. Moshannon Valley Corr. Center*, No. 09-2070, 2010 U.S. App. LEXIS 24938, at *6 (3d Cir. Dec. 7, 2010) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003)). *See also Nuttall v. Dallas Indep. Sch. Dist.*, Case No. 3:20-cv-3342-M-BK, 2021 U.S. Dist. LEXIS 192954, at *7 (N.D. Tex. Sept. 1, 2021) ("Failure to exhaust is an affirmative defense, and "[a] court should . . . dismiss a case only if an affirmative defense or other bar to relief appears on the face of the complaint.") (citing *Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991) (citing *Landry v. Air Line Pilots Ass'n Int'l AFL—CIO*, 901 F.2d 404, 435 (5th Cir. 1990))).

Here, Plaintiffs specifically allege that they "have exhausted their administrative remedies . . .." Compl. at ¶ 42. Failure to exhaust is not apparent from the face of the complaint. Moreover, said Defendants fail to persuade the Court that Plaintiffs have failed to exhaust their administrative remedies.

Said Defendants maintain that 29 V.I.C. § 295⁴ requires Plaintiffs to appeal Newton's refusal to approve electric service to their fourth apartment unit/fifth electric meter to the

---

³ Defendants correctly bring their motion under Fed. R. Civ. P. 12(b)(6) and not (b)(1) because "[u]nder federal law, '[a] failure to exhaust is normally considered to be an affirmative defense,' not a jurisdictional requirement." *Vale Park Animal Hosp. v. Project 64*, 611 F. Supp. 3d 600, 607 (N.D. Ind. 2020) (citing *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006)).

⁴ Section 295 of Title 29 of the Virgin Islands Code provides, in pertinent part:

> (a) Any person who feels that an injustice has been done him by any order, rule, or regulation of the Commissioner of Planning and Natural Resources or the Commissioner of Health issued under the authority provided in this Code may appeal therefrom to the Board of Land Use

Board of Land Use Appeals. *See generally* Mot. (ECF No. 17). However, the plain language of the statute specifies that only an "order, rule, or regulation" of the "Commissioner" of DPNR is appealable under Section 295(a). Here, Plaintiffs allege acts of Defendant Newton, an employee of DPNR, not the Commissioner, involving the fabrication of a purported "rule" of WAPA, not DPNR. No allegation or evidence of an "order, rule, or regulation" of the "Commissioner" of DPNR appears in the Complaint. Also, Section 295(a) lists six "decisions or actions that may be grounds for such an appeal." The allegations of Plaintiffs' Complaint do not fit within the scope of any the enumerated grounds. The listed grounds also appear to be directed to the approval or denial and/or contents of land use/construction permits. Plaintiffs aver that they applied for and received all the building and other permits that were required. Compl. at ¶¶ 14-15; Opp'n at 3. The land use/construction permits required under "the Code" are not at issue.

Defendants cite *Tutein v. Insite Towers, LLC*, 572 Fed. App'x 107 (3d Cir. 2014), in support of their contention that Plaintiffs have failed to exhaust administrative remedies. *See* Mot. at 4-5; Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss (ECF No. 20) at 2. However, the facts in *Tutein* are not analogous to the facts set forth in the Complaint herein, thus rendering the holding of *Tutein* inapposite. In requiring exhaustion of administrative remedies there, the *Tutein* court found that the "allegations against DPNR clearly concern

---

Appeals by filing a written notice of his appeal with the Board within thirty (30) days after receipt of the order or ruling complained of.

Appeals may be taken from any decision or action:

> (1) Approving or disapproving the mode or manner of construction proposed to be followed;
>
> (2) Approving or disapproving the materials to be used in the erection or alteration of a building or structure;
>
> (3) When it is claimed that the provisions of the Code do not apply;
>
> (4) When an equally good or more desirable form of construction than the one required by the permit official can be employed in a specific case;
>
> (5) When it is claimed that the true intent and meaning of this Code or of some of its provisions have been misconstrued or wrongly interpreted;
>
> (6) When it is claimed that there are special extraordinary circumstances in the case which justify variances from the requirements established in this Code.

29 V.I.C. § 295(a).

the agency's decision to approve InSite's construction permits without notice or a public hearing. As such, those claims would be within the jurisdiction of the BLUA, making exhaustion an appropriate requirement." *Tutein*, 572 F. App'x at 111. As the Court details hereinabove, the allegations of Plaintiffs' Complaint do not concern the approval or disapproval or contents of land use/construction permits. Consequently, the Court finds that 29 V.I.C. § 295(a) does not apply to the facts at bar, is not controlling, and dismissal for failure to exhaust administrative remedies thereunder is not warranted.

Further, the GVI and Newton do not identify any administrative procedures available to Plaintiffs by which they could obtain relief from Newton's alleged capricious and arbitrary refusal to approve their request for electric service. Thus, the Court finds that, for motion to dismiss purposes, Plaintiffs have exhausted administrative remedies.

### *B. Failure to state a claim*

Even if Defendants could prove that Plaintiffs have failed to exhaust administrative remedies, such defense has been held not to bar a Section 1983 claim.

> The Supreme Court has consistently noted that exhaustion of state remedies, whether judicial or administrative, is not required prior to the commencement of an action under 42 U.S.C. § 1983 in federal court. In *McNeese v. Board of Education*, 373 U.S. 668, 672, 10 L. Ed. 2d 622, 83 S. Ct. 1433 (1963), the Court emphasized that the congressional purpose in enacting § 1983 was "to provide a remedy in the federal courts supplementary to any remedy any State might have." *See Monroe v. Pape*, 365 U.S. 167, 183, 5 L. Ed. 2d 492, 81 S. Ct. 473 (1961). Thus, in *McNeese*, the Court rejected the argument that failure to exhaust administrative remedies barred suit in federal court under § 1983.

*Hochman v. Board of Education*, 534 F.2d 1094, 1096 (3d Cir. 1976), *cited in Teed v. Hilltown Twp.*, Civil Action No. 03-cv-6040, 2004 U.S. Dist. LEXIS 9477, at *16-17 (E.D. Pa. May 20, 2004) (where the court declined to dismiss the plaintiff's equal protection claim for failure to exhaust).

> It is settled law that:
>
> "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (footnote omitted) (citing <u>Baker v. McCollan</u>, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). Consequently, in order to state a claim for relief pursuant to § 1983, "a plaintiff must demonstrate the defendant, acting under color of

state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999), and Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

*Caldwell v. Twp. of Middletown*, Civil Action No. 13-762, 2013 U.S. Dist. LEXIS 168662, at *7-8 (E.D. Pa. Nov. 26, 2013). In the matter at bar, Plaintiffs allege that Newton, acting as a DPNR inspector, deprived Plaintiffs from the use of their fourth apartment unit, by wrongfully withholding approval of electric service, and that GVI and Defendant Smith, also deprived them of their property by not correcting Newton's wrongful conduct.

In response to Plaintiffs' allegations regarding the reason given by Newton for refusing to approve electric service for Plaintiffs' fourth apartment unit, Defendants GVI and Newton counter with alternate facts: 1.) that Plaintiffs' roof construction did not conform to the permit that was issued, Mot. at 2, and 2.) that Newton discovered that Plaintiffs "had not submitted an Electrical Final Inspection Request Application, the document required to initiate the final inspection process. Until the Electrical Final Inspection Request Application is submitted and the final inspection performed the Water and Power Authority (WAPA) will not energize an electrical meter." *Id*. Said Defendants also claim that this "discovery" was made after the Commissioner of DPNR received correspondence from Plaintiff Maria Hodge regarding the issue and then the Commissioner directed Newton to investigate. *Id*. Defendants do not state whether they informed Plaintiffs of this application and/or their alleged failure to submit one. In their opposition, Plaintiffs maintain that Defendants' version of the facts are "false," that Plaintiffs "not only submitted the required request for inspection, but they were granted a 'Final Electrical Certificate' for the repaired premises after that inspection was completed." Plaintiffs' Opposition to Motion to Dismiss (Opp'n) (ECF No. 18) at 2-3. Again, at the motion to dismiss stage, the Court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the non-moving party. Therefore, the Court gives no weight to Defendants' purported reason for Newton's refusal to approve Plaintiffs' request for electric service.

### 1. Due process

Defendants GVI and Newton argue that because Plaintiffs failed to appeal to the Board of Land Use Appeals as required by 29 V.I.C. § 295, they "have not taken advantage of the

administrative processes available to them so that their due process claim . . . must be dismissed." Mot. at 1-2. Courts recognize both the right to procedural and substantive due process afforded by the Fourteenth Amendment.

### a. Procedural due process

As the Third Circuit Court of Appeals has articulated, to state a claim under Section 1983 for a violation of procedural due process rights, a plaintiff must allege a deprivation of her interest ""'encompassed within the Fourteenth Amendment's protection of life, liberty, or property" and that the available procedures did not provide due process of law.'" *Thompson v. Del. Dep't of Servs. for Child., Youth & their Fams.*, 44 F.4th 188, 194 (3d Cir. 2022) (quoting *In re Energy Future Holdings Corp.*, 949 F.3d 806, 822 (3d Cir. 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006))). It should be obvious that a deprivation of a guaranteed constitutional right in the absence of any procedure necessarily violates due process. Here, no applicable procedure for Plaintiffs to challenge Newton's apparent unauthorized denial of electric service for Plaintiffs' fourth apartment even has been identified. Despite the unavailability of formal procedures, Plaintiffs allege that they attempted to notify persons who could have taken steps to correct Newton's unconscionable actions, but such notice of Newton's alleged wrongful conduct to Newton's supervisor and the Commissioner of WAPA, and even to the Office of the Lieutenant Governor and WAPA's legal counsel, has gone unheeded. Compl. at ¶¶ 25, 26, and 29.

### b. Substantive due process

> [T]he substantive component of the Due Process Clause of the Fourteenth Amendment bars "arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Leamer v. Fauver,* 288 F.3d 532, 546 (3d Cir. 2002). To prevail on such a claim, a plaintiff must establish that he has a protected property interest and that a governmental actor's behavior in depriving him of that interest was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Desi's Pizza, Inc. v. City of Wilkes-Barre,* 321 F.3d 411, 427 (3d Cir. 2003) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

*First Ave. Realty, LLC v. City of Asbury Park*, Civil Action No. 09-6321 (JAP), 2013 U.S. Dist. LEXIS 156227, at *18 (D.N.J. Oct. 31, 2013). Plaintiffs allege that Newton's purported reason for refusing to approve their fourth apartment unit for electric service was a WAPA "rule"

that he fabricated – a WAPA customer service representative refuted the existence of such a rule – because he had a personal "grudge" against Plaintiff Lawrence Hodge. The Court, accepting Plaintiffs' allegations as true and construing them in a light most favorable to Plaintiffs, finds as a matter of law that Newton's conduct was so egregious and outrageous that it shocks the conscience.[5]

Based upon the foregoing, the Court finds that Plaintiffs have adequately alleged a plausible claim for a violation of their 14th Amendment due process rights.

### *2. Equal protection*

The Court also finds that Plaintiffs have alleged a plausible Section 1983 claim under the equal protection clause of the Fourteenth Amendment. As the *Teed* court explains,

> "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 67 L. Ed. 340, 43 S. Ct. 190 (1923)). Accordingly, the Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564.

*Teed*, 2004 U.S. Dist. LEXIS 9477, at *20. The *Teed* court then notes:

> In *Olech*, the plaintiff alleged that the Village of Willowbrook intentionally demanded a thirty-three-foot easement as a condition of connecting her property to a municipal water supply but required only a fifteen-foot easement from other similarly situated property owners. *Id.* at 565. The Supreme Court found these allegations sufficient to state a claim for violation of the plaintiff's right to equal protection. *Id*. Plaintiffs' equal protection allegations are indistinguishable from those the Supreme Court found sufficient in *Olech*. Accordingly, we will deny Defendants' motion to dismiss Plaintiffs' equal protection claim for failure to state a claim.

---

[5] *See*, e.g., *Toll Bros., Inc. v. Twp. of Moorestown*, Civil Action No. 10-4843, 2011 U.S. Dist. LEXIS 68788, at *24 (D.N.J. June 27, 2011) (where the court recites: "'Whether an incident "shocks the conscience" is a matter of law for the courts to decide.' Benn v. Universal Health Sys., 371 F.3d 165, 174 (3d Cir. 2004). 'While there is no calibrated yard stick to determine whether challenged actions shock the conscience, the standard encompasses only the most egregious official conduct'" Cherry Hill Towers, L.L.C. v. Township of Cherry Hill, 407 F. Supp. 2d 648, 655 (D.N.J. 2006) (internal citations omitted)).

*Hodge, et al. v. Government of the Virgin Islands, et al.*
Case No. 3:22-cv-00072
Memorandum Opinion
Page 11 of 12

*Teed*, 2004 U.S. Dist. LEXIS 9477, at *20-21.

Here, although Plaintiffs do not identify others who were treated more favorably by Newton or even specifically allege that others were more favorably treated, such treatment can be inferred from Plaintiffs' allegation that Newton completely made up the purported "rule" upon which he relied to withhold approval for electric service to "punish" Plaintiff Lawrence Hodge for some perceived personal slight. Compl. at ¶¶ 23-24. Such treatment also can be inferred from Plaintiffs' allegation that, when initially contacted by Plaintiff Lawrence Hodge, Newton's supervisor "agreed that he was entitled to have approval of his apartment for occupancy . . . ." *Id*. at ¶ 26. The Court finds these allegations sufficient to state a plausible claim for violation of Plaintiffs' right to equal protection. *See, e.g., Donahue v. Lawrence*, C.A. No. 1:21-cv-70, 2022 U.S. Dist. LEXIS 50246, at *11-12 (W.D. Pa. Mar. 21, 2022) ("District courts within the Third Circuit apply a 'relaxed' pleading requirement to class-of-one theory cases, which 'negates the need for specificity.' *Id. quoting Phillips v. Cty. of Allegheny*, 515 F.3d 224, 244 (3d Cir. Feb. 5, 2008). In *Phillips*, the Third Circuit held that a plaintiff is not required to identify 'actual instances where others have been treated differently for purposes of equal protection . . . .'") (footnote omitted)); *Marinkovic v. Battaglia*, 14-cv-49, 2016 U.S. Dist. LEXIS 88913, at *23-24 (W.D. Pa. July 8, 2016) (where the court observes, regarding the three elements to state a claim under a "class of one" theory, that "[w]hile the first factor must be pled 'with specificity' a complaint need not identify 'specific instances where others have been treated differently.' *Id.* at 245. Plaintiff's Amended Complaint is internally inconsistent as to whether he was uniquely situated, but—construed liberally as it must be—it appears that Plaintiff has properly pled that he was treated differently from others who were similarly situated" (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008); *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004))); *First Ave. Realty, LLC v. City of Asbury Park*, Civil Action No. 09-6321 (JAP), 2013 U.S. Dist. LEXIS 156227, at *21 (D.N.J. Oct. 31, 2013) ("To survive dismissal, a 'class of one' claim need not 'name names' of persons who have been treated differently . . . ." (citing *Phillips v. County of Allegheny,* 515 F.3d 224, 243-246 (3d Cir. 2008))); *Davie v. Barnegat Bd. of Educ*., Civil Action No. 09-5769 (MLC), 2010 U.S. Dist. LEXIS 27840, at *17 (D.N.J. Mar. 24, 2010) (where the court finds: "'To survive a motion to dismiss a

*Hodge, et al. v. Government of the Virgin Islands, et al.*
Case No. 3:22-cv-00072
Memorandum Opinion
Page 12 of 12

Section 1983 claim premised on an equal protection violation, a plaintiff needs only to "allege . . . that [the plaintiff] received different treatment from other similarly situated individuals or groups."' . . . The plaintiff here states that the defendant denied him educational opportunities that it provided to other students. (Compl. at 11.) At the motion to dismiss stage, this is sufficient. The plaintiff here has 'pled sufficient facts, if proved, to establish that the defendants denied [him] educational opportunities provided to students without disabilities.'" (quoting *James S. v. Sch. Dist. of Phila.*, 559 F. Supp. 2d 600, 623, 627 (E.D. Pa. 2008))).

## IV. CONCLUSION

Based upon the foregoing, the Court finds that Plaintiffs are not required to exhaust any administrative remedies in order to pursue their claims. The Court further finds that Plaintiffs articulate a plausible claim pursuant to 42 U.S.C. § 1983 in their Complaint. Consequently, the Court will deny Defendants GVI and Newton's motion to dismiss.

**Dated:** July 5, 2023                                         */s/ Robert A. Molloy*
                                                                **ROBERT A. MOLLOY**
                                                                **Chief Judge**